## Herman P. Benjamin *v.* Samuel D. Davis et al.

An error of the judge in fixing the return day of the appeal, will not be allowed to prejudice
  the appellant. If the appeal be filed on the return day fixed by law, it is sufficient.
Where armed men have pursued and shot, with ball or buck-shot, a slave, they must show
  the necessity which existed for thus shooting him, or they will be held liable for his value·

APPEAL from the District Court of West Feliciana, *Stirling*, J.   *C. Ralliff*,
for plaintiff, contended : This is an action brought by plaintiff against the
defendants for the value of a slave by the name of *Ned*, alleged to have been
killed by the defendants. The petition sets forth the time and manner of the
killing of the slave, and alleges that the killing was the act of the defendants, and
avers the slave to be worth the sum of $———, and prays judgment against the
defendants *in solido*, for the amount, interest and costs. The defendants
answered separately, but merely put in a general denial.

Upon the merits, the killing of the slave *Ned* by defendants is fully made out.
See testimony of *Ackley Perkins*, of *George Williams*, and of *John Weder-
strandt*. The facts, as proven by the witness *Ackley Perkins*, are substantially
as follows : the defendants came to the house of witness early in the morning
with their negro dogs, and said they were going to hunt runaway negroes ; they
went down into the plantation of witness, and were not long gone before witness
saw them returning, one of them walking, and the negro boy *Ned* lying across
one of the horses, shot. They brought him to the house of witness ; and after
some ineffectual attempts to staunch the blood, the negro was sent home to
*Benjamin's*, his master, and next day he died of his wounds. The testimony of
*John B. Wederstrandt*, who was one of the coroner's inquest, fully describes the
nature of the wounds, and the cause of the negro *Ned's* death.

The defendants attempted to justify, by trying to prove *Ned* was run away ;
this they endeavored to establish by several witnesses. This testimony was
objected to by plaintiff's counsel, upon the grounds that the character of the boy
*Ned* was not put at issue by the pleadings, and there was no allegation in the
answer that *Ned* was run away. The court received the evidence, and plaintiff
took his bill. They also proved by *Perkins*, that they brought in with *Ned* a
large carving knife that had been stolen or taken from his quarter, that was used
there for cutting up meat, when they issued out allowances to the negroes. They
also proved, by *George Williams*, that some of the dogs were cut with a knife,
&c. All this was objected to by plaintiff's counsel, but admitted by the court, and
bill reserved. This is, in substance, their justification. They also endeavored
to prove that *Francis Matt* was a freeholder. This was also objected to, on the
ground that a title to freehold could not be proved by parol.

Then, the first question that presents itself to the mind is, was the boy *Ned* the
property of *Mr. Benjamin*, the plaintiff, killed ? If so, by whom was it done ?
That he was killed will scarcely be denied. If it is, then the testimony of *Ack-
ley Perkins, George Williams, John B. Wederstrandt*, and *Robert Chatham*,
before referred to, fully establishes the fact. Then, did the defendants do it ?
No one saw them do it. But they were seen bringing the boy *Ned* home across
one of the horses, badly shot, and fresh bleeding ; and that the boy died next
day, and an inquest was held over him. Have they attempted to account for
the boy *Ned's* being in that condition ? Certainly not ; but they have attempted
to justify, by endeavoring to prove *Ned* was a negro of bad character ; that he
was runaway at the time, and that some of their negro dogs were cut with a
knife, and that the knife brought home with them was stolen from *Perkin's*
quarter. They have attempted further to prove by *Robert Chatham*, that when
he related to *Benjamin* what *Davis* had told witness about the killing of the
negro, that he, *Benjamin*, said he wished they had killed the rascal. Now is
not the conclusion irresistible, that *Davis* and *Matt* killed *Benjamin's* boy *Ned ;*

they were seen going out in that direction in the morning, hunting runaway negroes, and soon returned with *Ned* badly shot, of which he died next day. *Benjamin* all the while was absent from home.

*Davis* was the overseer of *Benjamin*. This boy the day before had given some offence; *Davis* attempted to flog the boy, and *Ned* run; this is the head and front of *Ned's* offending. And *Davis* goes and gets *Francis Matt* and the negro dogs, and because *Ned* had not power of human endurance enough to stand and let the dogs worry him to their entire satisfaction, they shoot him down like a beef. Just imagine what excuse can two powerful, athletic men, with horses, guns, pistols, and dogs, in an open field, have for shooting an old negro down of forty-five years of age, unarmed, or at least having nothing but a carving knife, if that. If this is to be tolerated, the shedding of that species of human blood is much more commendable than I had ever dreamed of. It is true there has been one mistrial, and the last time the case was submitted, without argument of counsel, the jury gave a verdict for the defendants. But now we rely on this court for a reversal of that verdict, and one in favor of plaintiff for the value of the boy *Ned*, as prayed for, with interests and costs in both courts. See the case of *Bell* v. *Hebert*, 3 Ann. 132; *Crawford* v. *Chaney*, 3 N. S. 143; 16 L. R. 117; 1 R. R. 140; C. C. 2294, 2309, 1928; *Allen* v. *Young*, 9 M. R. 221; *Delery* v. *Monett*; 11 M. R. 10; *Morgan, Syndic,* v. *Feverish*, 8 N. S 590; *McMasters* v. *Beckwith*, 2 L. R. 331; *Goldenburgh* v. *Wright*, 13 L. R. 373; *Taylor* v. *Andrews*, 16 L. R. 438.

*Brewer* and *Collins*, for defendant, contended : In this case a motion has been filed to dismiss the appeal, on the ground that no legal return day for the same has ever been fixed by the judge of the district court, and on the ground that the record was filed too late. On these points the record shows, that, on motion of counsel for the appellant, an appeal was granted, and made returnable on the *second* Monday in February, A. D. 1851. The legal return day for appeals from the Seventh Judicial District Court is the *fourth* Monday in February. Act of 1850, p. 45. The late Supreme Court held, that an order allowing an appeal returnable on a day on which the court does not sit, is as an order allowing one returnable on any day, or not returnable at all. *Rains* v. *Kemp*, 4 L. R., 318. The order, then, making the appeal returnable on the *second* Monday, a day on which the Supreme Court does not sit for the trial of appeals from the seventh district, is the same as if no return day had been fixed. The provisions of law are positive, requiring a return day to be fixed. C. P. 574.

Should the court be of opinion, that the *second* Monday was so far a judicial day, that the appeal was not vitiated by being made returnable on that day, then, by the same reasoning, the days following the second Monday would be judicial days, and the appeal should be dismissed on the ground that it was filed too late. The appellant, certainly, should not be permitted to treat the second Monday and the three days thereafter as judicial days, on which his appeal could properly be made returnable, and treat them not as judicial days when it is sought to enforce against him the legal penalties, for not seasonably filing his appeal.

This suit is brought to recover the sum of eight hundred dollars damages, alleged to have been occasioned by the act of the defendants, in shooting a slave belonging to plaintiff. The defendants severed in their answers, each pleading the general issue. One of the defendants, *Joseph Matt*, subsequently filed an amended answer, in which he alleged that he was a freeholder. A motion was filed for a separate trial, which was overruled.

This case turns mostly on questions of fact, upon which a jury has found in favor of the defendants.

The only evidence, to prove the killing of the negro, is the testimony of *Achley Perkins* and *George Williams*, who testify, that they saw the negro on the horse of one of the defendants, who brought him to the quarter of *Dr. Perkins*, there borrowed a cart and sent him to the residence of plaintiff, and that during the time the negro was thus in the custody of the defendants, he was suffering from a gun-shot wound. There is no act of the defendants thus testified to, but what tended to protect and preserve, rather than destroy the property of plaintiff.

The evidence for the defendants shows that the negro was a runaway. It also shows that the negro was armed, and resisted. *Achley Perkins* testifies that, when he saw the defendants with the negro, one of them had a knife

60

about eighteen inches long, which belonged to witness; that the negro had a wife on the plantation of *Dr. Perkins*, and that the knife had been stolen from the house in which the negro was in the habit of staying when in the quarter of witness; that the dogs of defendants were bleeding and appeared to have been cut with a knife. The evidence shows that the negro was a runaway, and justifies the inference that he was armed, and resisted attempts made to capture him.

It is lawful to fire upon runaway negroes who may be armed, and upon those who, when pursued, shall refuse to surrender. Greiner's Digest, § 3396.

Aside from the evidence, which brings the case clearly within the provisions of the law last cited, the presumption of law in favor of the defendants would be sufficient to exonerate them from all responsibility. The negro, by being a runaway, had placed himself in a state of resistance to the authority of the defendant, who was the overseer and agent of the plaintiff, and also in a state of resistance to the laws, and this resistance must be presumed to continue until some act on the part of the slave be proved, showing his submission.

It was the duty of *Davis*, as overseer for plaintiff, to attempt to capture the negro. He had a right to use the dogs in his attempt to make such capture, such means being customary among the planters of the parish, and the same means having been previously used by plaintiff to capture the same negro. The evidence shows that the defendants were acting in good faith towards the plaintiff, and that when *Davis* was asked to join in the hunt, he replied that he would, as one of *Benjamin's* negroes had runaway; and asked permission to take him home, in case he should be caught, without having him committed to jail.

It is also in evidence that the plaintiff, when informed that the negro had been shot, replied, that he wished he had been killed.

The judgment of the court was pronounced by

ROST, J. The motion to dismiss in this case, is not, in our opinion, tenable. The error of the judge in fixing the return day cannot, under the act of 1839, prejudice the plaintiff, and it was sufficient to file the record on the return day fixed by the act of 1850.

The act charged against the defendants is satisfactorily proved, and they have failed to show the necessity which could alone have justified it. Armed, and prepared as they were, the shooting with ball or buck-shot was totally unjustifiable. The verdict of the jury is clearly erroneous, and the judgment must be reversed. *Bell* v. *Hebert*, 3d Ann. 132. *Carmouche* v. *Bouis*, *ante*, p. 95.

It is therefore ordered, that the judgment in this case be reversed. It is further ordered, that the plaintiff recover from the defendants, *in solido*, $350, with legal interest, from the 27th October, 1847, till paid, and costs in both courts.